MORTIMER L. SAYLES, Plaintiff in Error,

*vs.*

ALVA STEWART and T. WESLEY ANDERSON, Defendants in Error.

ERROR TO THE DODGE CIRCUIT COURT.

It is not essential that a deposition be taken at the precise place, as to number and street, mentioned in the rule, notice and commission.

The parties, or their attorneys, have no legal right to be present and put questions to a witness examined before a commissioner upon written interrogatories.

It is no legal objection to a deposition that it was not taken at the precise place mentioned in the rule, notice and commission.

The commissioner's certificate, annexed to a deposition, stated that it was taken before him at his office, No. 52 Wall street, in the city of New York. The rule, notice and commission stated that the deposition would be taken before the commissioner (naming him) at his office at the corner of Nassau and Cedar streets in said city. *Held*, that this was no legal objection to the competency of the deposition.

THIS was an action of replevin, brought by the defendants in error against the plaintiff in error, to recover possession of a quantity or stock of goods and merchandise, of the alleged value of some five thousand dollars. The declaration was in the usual form, to which the defendant pleaded the general issue, with notice of justification under five writs of attachment issued out of, and under the seal of the Circuit Court of Dodge county, in favor of certain New York creditors, against Norman Stewart. The plaintiffs below obtained judgment for $170.

The principal questions brought under review in this court arose upon exceptions taken to the ruling of the Circuit Court on the trial, in regard to the admission of evidence, and instructions given to the jury, or asked and refused.

It appeared from the evidence set forth in the bill of exceptions, that in 1851 Norman Stewart commenced the mercantile business at Oak Grove, in the county of Dodge, and also at Portage City, in the county of Columbia, and continued in such business until about the middle of November, 1852, when he

sold out both stocks of goods to the plaintiffs below, and that about Christmas, 1852, the defendant, as sheriff, seized the goods at Oak Grove by virtue of several writs of attachment in favor of certain New York creditors of Norman Stewart. The question in controversy was, whether the sale of Norman Stewart to the plaintiffs was fraudulent and void as against the creditors of Norman Stewart.

The plaintiffs below proved that they purchased the goods of Norman Stewart on the 13th of November, 1852, and went into possession, and conducted the business thereafter until the seizure of the goods by the defendant, on Christmas, as aforesaid. The plaintiffs also gave in evidence a bill of sale and schedule of goods, executed by Norman Stewart to the plaintiffs, dated November 13, 1852. The value of the goods included in the schedule amounted to $8,180.82, of which sum $6,000 was paid in cash, and notes given for the balance. Also, a deed of land, by Norman and wife, to plaintiffs, of same date, consideration expressed, $1,300. The bill of sale is as follows:

"Know all men by these presents, that I, Norman Stewart, of Oak Grove, Dodge county, Wisconsin, in consideration of eight thousand and forty and 82-100 dollars, to me in hand paid by Thomas Wesley Anderson and Alva Stewart, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell and transfer and convey to the said Stewart and Anderson, the goods, chattels, wares and merchandise and personal property mentioned and described in the foregoing invoices and schedules, and in the bills therein mentioned, to have and to hold the same unto the said Stewart and Anderson, and their heirs and assigns forever.

"Dated November 13, 1852.          NORMAN STEWART.
    "In presence of, &c."

It was also proved that the plaintiffs had assumed New York debts of Norman to an amount larger than the balance over the

$6,000 paid by them for the Oak Grove stock. This was done by taking up Norman's notes and giving their own in lieu thereof.

The defendant, to maintain the issue on his part, gave in evidence the several writs of attachment referred to in his notice, with his return indorsed thereon; also, as evidence of the indebtedness of the said Norman, several promissory notes executed by him, on which the writs of attachment were based.

The defendant also called William H. Lander as a witness, who testified that he was a clerk for Norman, and remained in the employment of the plaintiffs. Witness thought the fall purchases of Norman for the Oak Grove and Portage City stores amounted to about $10,000; was present at the sale of goods and real estate. Sale was made Saturday afternoon, and completed about eight o'clock in the evening. The inventory was made a week previous. The sale was intended to embrace the whole stock of goods in the store. From the invoices it appeared, that in many instances the goods were bought on credit. Alva Stewart is brother of Norman, and resided at Fort Atkinson. Witness saw plaintiffs each pay to Norman money, $6,000, and understood that they had also purchased the stock at Portage City, and understood that these sales comprised all the property of Norman in Portage City and Dodge county.

The aggregate amount of Norman's purchases in the summer and fall of 1852 was about $20,000 to $25,000; the last stock was on a credit of six to twelve months. The sale at Portage City amounted to about $10,000 or $12,000; about $3,000 was paid in money, and the remainder in notes of Stewart and Anderson. There were no indorsers on the notes. Some $10,000 or more of the New York debts of Norman were secured by taking up his notes and giving the notes of Stewart and Anderson instead, in the fall of 1852. These notes were at six, nine and twelve months; some, perhaps, eighteen months, and two years. Stewart and Anderson assumed the debts of Norman to the amount they owed him.

The plaintiffs introduced in evidence seven notes made by them to Norman Stewart or order, amounting to some $10,000,

payable in six, nine, twelve, eighteen and twenty-four months, and dated 11th and 13th November, 1852, none of which were indorsed. These notes, it was claimed, were retired on the execution of the notes of the plaintiffs to the New York creditors of Norman.

The defendant's counsel then produced and offered in evidence the depositions of certain witnesses, taken before William C. Dusenbury, of New York, pursuant to notice and commission duly issued to him in said cause. The commissioner's certificate, annexed to and returned with the depositions, stated the same to have been taken before him, at No. 52 Wall street, in said city of New York. The rule, notice and commission stated that said depositions would be taken before the said commissioner, at his office, at the corner of Nassau and Cedar treets, in said city. It was admitted that the plaintiffs did not join in the commission, or file cross interrogatories, though they were duly notified, and served with copies of the affidavit, rule and interrogatories. The counsel for the plaintiffs objected to the depositions for the reason that the commissioner's certificate showed that the depositions were taken at a different place, as to street and number, from that stated in the rule, notice and commission. The court sustained the objection, and excluded the depositions, and the defendant excepted. The evidence was quite voluminous, but the foregoing are the material facts, as they appeared on the trial. The defendant proved the indebtedness of Norman, comprised in the attachment suits, and notes in process of collection for New York creditors to an amount between $3,000 and $4,000, not assumed by the plaintiffs.

*Yates*, for the plaintiff in error.

*O. Stewart*, for the defendant in error.

*By the Court*, WHITON, C. J. We do not see any error in the record of which the plaintiff in error can complain, except that which arises upon the ruling of the judge in regard to the depositions taken before the commissioner in New York. It appears

that the rule and commission stated that the depositions would be taken before the commissioner at his office at the corner of Nassau and Cedar streets in the city of New York, whereas the certificate of the commissioner showed that they were in fact taken at another place in said city.

It was not necessary to state in the commission at what particular place the depositions would be taken, and we do not think the fact that they were taken at another place than the one designated, ought to exclude them from the jury. *Circuit Court Rules,* 59, 60, 61, 62, 63. It was insisted upon at the argument, as a reason for their exclusion, that the plaintiff below ought to have the means of knowing where the depositions would be taken, in order to enable them to be present at the time when the witnesses deposed. We do not think that this constitutes any objection. Indeed, as the time when the depositions were to be taken is not specified in the commission, we do not see how the plaintiffs could have been benefited if they had been taken at the place appointed, nor prejudiced by the circumstance that they were taken elsewhere. But if the plaintiff had known the time when and the place where the depositions would be taken, he could have derived no rightful advantage from that circumstance; he could put no questions to the witnesses, and could not in any way interfere with their examination by the commissioner. Indeed the presence of the parties or their attorneys is an impropriety which by the rules of some courts is forbidden. The witness who is examined upon a commission issued in pursuance of our rules, ought to answer the interrogatories and cross interrogatories which are propounded, in the absence of those whose interest may be promoted by distorting his testimony.

For these reasons we think the judge erred in excluding the depositions, and for that error the judgment must be reversed.

It appears from the bill of exceptions that the judge before whom the cause was tried, instructed the jury that conveyances of goods and chattels made with intent to hinder, delay or defraud the creditors of the vendor were not made void by the statute, owing to the accidental omission of words necessary to

give it effect, but that such conveyances were void at common law. We do not think that we are called upon to decide whether the judge was correct or not in the view which he took of this matter, because the instructions which he gave to the jury were as favorable to the plaintiff in error as though he had instructed them that such conveyances were void by statute. The plaintiff in error claimed the goods in the right of the attaching creditors of Norman Stewart, and was interested to show that the sale of the goods to the defendants in error was void as to those creditors. The judge instructed the jury that the sale was void as to the creditors, if made with intent to hinder, delay or defraud them, and submitted the question fairly to them. This was all that the plaintiff in error could rightfully claim. We must therefore reverse the judgment solely on the ground above mentioned.

Judgment reversed and *venire de novo* awarded.